IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RYAN A. STEPHENS,<br><br>                Petitioner,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                Respondent. | Case No. CV08-481-CWD<br><br>MEMORANDUM DECISION AND ORDER |

## Introduction

Currently pending before the Court is the Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits filed by Ryan Stephens ("Petitioner") on November 10, 2008. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will affirm the decision of the Commissioner.

## I.
## Procedural and Factual History

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on August 16, 2005, alleging disability due to bipolar disorder as well as a fractured leg, ankle, and foot. (AR 74.) Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed. Administrative Law Judge ("ALJ") Alejandro Martinez held a hearing on October 1, 2007, after which he concluded in his Decision dated November 28, 2007, that Petitioner was not disabled. (AR 13-23.) The Appeals Council

denied Petitioner's appeal of the ALJ's decision on September 24, 2008. (AR 3-5.) Petitioner appealed this final decision to this Court, which has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the 2007 hearing before the ALJ, Petitioner was thirty-nine years of age. He has a bachelors degree and a Doctorate of Podiatric Medicine. His past relevant work includes work as a podiatrist.

## II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since August 16, 2005, the date the application was filed.[1] At step two, it must be determined whether claimant suffers from a severe impairment. The ALJ found Petitioner's mild bipolar disorder II with depression, a fracture of the right ankle, status post corrective surgery, and a history of alcohol abuse "severe" within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed impairments, specifically Listing 12.04 for affective disorders or Listing 1.06 for fractures of a lower limb. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity ("RFC") and determine at step four whether the claimant

---

[1] Petitioner alleged an onset date of January 2005, but was ineligible for benefits for any month including and preceding August 2005.

MEMORANDUM DECISION AND ORDER - 2

has demonstrated an inability to perform past relevant work. The ALJ found Petitioner was not able to perform his past relevant work as a podiatrist.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. The ALJ found that Petitioner could perform other jobs that exist in significant numbers in the national economy, including a light unskilled job of small parts assembler and sedentary unskilled job of touchup screener. Based on the foregoing, ALJ Martinez issued a finding of not disabled.

### III.
### Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal

error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court must not disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled

role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## IV.
## Discussion

Petitioner believes the ALJ erred at the third and fourth steps of the sequential evaluation process. Specifically, Petitioner maintains that the ALJ's finding at step three that he did not meet Listing 12.04 was error because the ALJ improperly considered the opinion of Petitioner's treating psychiatrist. Petitioner also contends that the ALJ erred at step four because the ALJ improperly rejected Petitioner's father's testimony and none of the evidence of record supports the ALJ's Residual Functional Capacity ("RFC") assessment  As Petitioner's main argument relates to the ALJ's treatment of his treating psychiatrist's opinion, the Court will address that issue first.

### A. Treating Physician's Opinion

Petitioner contends that the ALJ improperly rejected Dr. Linda Carter's conclusion that he met the requirements for Listing 12.04. Dr. Carter was Petitioner's prescribing psychiatrist, part of a group of medical providers that worked together to evaluate and treat Petitioner.

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*,

923 F.2d 1391, 1396 (9th Cir.1991).  If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).  In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings.  *Matney ex rel. Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992).  Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities.  *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

Dr. Carter began treating Petitioner on July 7, 2005, as Petitioner's prescribing psychiatrist. Dr. Carter's initial examination of Petitioner on August 31, 2005, resulted in a diagnosis of Biopolar II disorder, narcissistic traits, a history of Meniere's disease and a global assessment of function ("GAF") of 70 indicating only mild symptoms. (AR 191.)  On May 19, 2006, Dr. Carter completed a Mental Capacity Assessment and Listing 12.04 form.  On both, Dr.

Carter opined that Petitioner had extreme impairment in his ability to maintain attention and concentration for extended periods, marked impairment in his ability to work in coordination with or in proximity to others without being distracted, marked impairment in his ability to work a normal workday or workweek, marked impairment in his ability to interact appropriately with general public, extreme impairment in his ability to accept instructions and criticism from coworkers, and marked impairment in his ability to get along with co-workers. (AR 171-172.)

ALJ Martinez did not give full weight to Dr. Carter's opinion, finding that it was inconsistent with the evidence as a whole, not supported by Dr. Carter's progress notes, not supported by Dr. Carter's relationship with Petitioner, and invading upon the Commissioner's prerogative. (AR 20.)

The ALJ's conclusion that Dr. Carter's evaluation was not consistent with the evidence of record was supported by substantial evidence. In discussing the evidence of record, the ALJ found Petitioner "has a tendency to misrepresent his condition or to seek to take unfair advantage of situations." (AR 21.) Specifically, the ALJ cites consulting physician Mary Himmler, M.D.'s opinion as demonstrating Petitioner's exaggeration of his symptoms (AR 20) as well as inconsistencies in Petitioner's reporting of his compliance with medication and other incidents including the death of his stepfather and how he broke his ankle. (AR 21.)

Petitioner does not contest the ALJ's assessment of his credibility. Instead, Petitioner argues that the credibility assessment is irrelevant to the ALJ's evaluation of the treating physician's opinion and the lay witness testimony. However, an ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

MEMORANDUM DECISION AND ORDER - 7

Dr. Carter's RFC assessment and her progress notes are based, at least in part, on Petitioner's reporting. (AR 174.) Therefore, as the Petitioner did not contest the ALJ's credibility determination, the Court cannot conclude that the ALJ's discrediting of Dr. Carter's opinion was error.

Additionally, the ALJ's conclusion is supported by the discrepancy in GAF scores assigned to Petitioner in the first month of his treatment. In her intake assessment, Dr. Anna Morrison assigned Petitioner a GAF of 60 indicating moderate limitations on July 7, 2005 (AR 201); Dr. Carter's own initial evaluation gave him a GAF of 70 indicating mild limitations on August 31, 2005 (AR191); and the evaluation performed by Heath Sommer and Jessica Reed, and supervised by clinical psychologist Robert Card, assigned him a GAF rating of 31indicating severe limitations on August 30, 2005 (AR 160). Robb Dye, Petitioner's therapist, assigned the most recent GAF score of 51-60 on July 7, 2008, indicating moderate limitations. (AR 258.) This dramatic inconsistency in assessment is not explained by Petitioner in his briefing.

Further, the ALJ's conclusion is supported by Dr. Kristy Farnsworth's testimony at Petitioner's hearing that it is "kind of unusual that there would be three assessments within a two or three month period of time that assess the level of functioning with such varying scores." (AR 304.) She further testified that she felt that the diagnosis of major depressive order in Mr. Card's report was "contrary to the results of the depression inventory that indicated a minimal to mild level of depression." (AR 304-305.) Based on the foregoing, the Court finds the ALJ's conclusion that the evidence is inconsistent with Dr. Carter's assessment is supported by substantial evidence.

MEMORANDUM DECISION AND ORDER - 8

The Court also finds that the ALJ's discrediting of Dr. Carter's opinion based on her own progress notes and relationship with Petitioner were supported by substantial evidence. Dr. Carter's notes are brief and focused on Petitioner's medications, rarely including statements relating to Petitioner's mental state. As noted by the ALJ, as Petitioner's prescribing psychiatrist and not his therapist, Dr. Carter's notes "do not reflect inquiry into claimant's capacity at any given time." (AR 20.) Although not contradictory to Dr. Carter's later RFC assessment, the progress notes contain very little support for, or information relating to, the basis for Dr. Carter's determination that Petitioner has several severe and extreme limitations. Dr. Farnsworth's testimony regarding the more thorough notes of Mr. Dye, Petitioner's therapist, also support this conclusion. She noted that "even the therapists notes don't really help us with what impact those symptoms have on everyday functioning." (AR 305.)

Based on the foregoing, the Court cannot conclude that the ALJ's assessment of Dr. Carter's opinion constituted error.

## B.  Step Three Listing 12.04

The ALJ found that Petitioner's impairments did not meet or equal any listing. Specifically, the ALJ found that Petitioner's impairments did not meet or equal what the ALJ considered to be the most relevant listing, Listing 12.04 for affective disorders.

If the claimant satisfies the criteria under a listing <u>and</u> meets the twelve month duration requirement, the Commissioner must find the claimant disabled without considering age, education and work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d). A claimant bears the burden of producing medical evidence that establishes all of the requisite medical findings that his impairments meet or equal any particular listing. *Bowen v. Yuckert,* 482 U.S 137, 146, n. 5

(1987). Further, if the claimant is alleging equivalency to a listing, the claimant must proffer a theory, plausible or other, as to how his combined impairments equal a listing. *See Lewis v. Apfel,* 236 F.3d 503, 514 (9th Cir. 2001).

In evaluating step three, ALJ Martinez determined that Petitioner met the diagnostic criteria or part A, but that Petitioner did not meet the severity criteria listed in part B or alternatively part C. 20 C.F.R. pt. 404 subpt P, app. 1, §§12.00A, 12.04. Petitioner argues that this determination was error because the ALJ improperly discredited Dr. Carter's opinion that Petitioner met Listing 12.04. As the Court has previously explained, the ALJ did not err in his analysis of Dr. Carter's opinion. Therefore, the ALJ's evaluation of Listing 12.04 was supported by substantial evidence.

## C. Step Four - Residual Functional Capacity

At the fourth step in the sequential process, the ALJ determines whether the impairment prevents the claimant from performing work which the claimant performed in the past, *i.e.*, whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). A claimant's residual functional capacity is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a). An ALJ considers all relevant evidence in the record when making this determination. *Id.* Generally, an ALJ may rely on vocational expert testimony. 20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). An ALJ must include all limitations supported by substantial evidence in his hypothetical question to the vocational expert, but may exclude unsupported limitations. *Bayliss*, 427 F.3d at at 1217. However, the AJL need not consider or

include alleged impairments that have no support in the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2000).

Here, the ALJ determined that Petitioner had the residual functional capacity to perform light work with certain limitations. In reaching this conclusion, the ALJ also determined that Petitioner was mildly limited in his ability to sustain concentration and attention for extended periods, to remember recent and intermediately occurring events and items; in performing duties within a schedule, maintaining regular attendance and being punctual within customary tolerances; in sustaining an ordinary routine without special supervision; in getting along with co-workers or peers without distracting them or exhibiting behavioral extremes; and interacting appropriately with the general public. The ALJ further found Petitioner moderately limited in his ability to deal with customary work stress. (AR 17.)

Petitioner argues that this RFC assessment is in error because the ALJ failed to take Petitioner's father, Donald Stephen's, testimony into consideration. Further, Petitioner contends the evidence of record does not support the ALJ's findings. The Court will address these two arguments in turn.

**1. Lay Witness Testimony**

Lay testimony regarding a claimant's symptoms constitutes competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) *citing Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) *internal citations omitted; Regennitter v. Commissioner of Social Sec. Admin*. 166 F.3d 1294 (9th Cir. 1999). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane

reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Holzberg v. Astrue*, 2010 WL 128391 (W.D. Wash. Jan. 11, 2010) *citing Lewis*, 236 F.3d at 512. However, "where the ALJ's error lies in failure to property discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Commissioner, Social Sec. Admin.*, 454 F3d 1050, 1056 (9 th Cir. 2006).

Here, the ALJ addressed Mr. Stephens' testimony, noting that "[c]laimant's father testified that the claimant will isolate himself in his mobile home for days at a time. He will lock himself in the trailer and no one can check on his welfare. When one sees the inside of his trailer, it is always unkempt.... He will not accept any suggestions from his father and fights with him all of the time." (AR 18.) Although the ALJ did not list specific reasons for dismissing the testimony, Respondent argues that the ALJ's credibility determination of Petitioner undercuts Mr. Stephens testimony, because the reports by Petitioner's father do not establish that such behavior was caused by Petitioner's medical impairments. (Response p. 11, Docket No. 17.) The Court finds this reasoning "arguably germane" to Mr. Stephens' testimony, particularly in light of the ALJ's uncontested finding that Petitioner exaggerated his condition and symptoms. Therefore, as the ALJ's credibility assessment of Petitioner was uncontested and supported by substantial evidence, the Court cannot conclude that the ALJ's failure to fully credit or discredit the testimony of Petitioner's father was in error.

### 2. Evidence of Record

Petitioner contends that none of the evidence of record supports the ALJ's RFC assessment that Petitioner had moderate limitations in his ability to deal with customary work stress and mild limitations in all other categories. Contrary to Petitioner's assertion, the ALJ's decision addressed in detail Petitioner's testimony, Petitioner's father's testimony, and the medical evidence of record including the opinions of Dr. Carter, Mr. Dye, Mr. Sommer, Ms. Reed, Mr. Card, and Dr. Himmler. As noted above, the ALJ properly assessed Dr. Carter's and Petitioner's father's opinions, and pointed to inconsistencies in the record. Further, the ALJ's assessment of Petitioner's credibility is uncontested.

As a significant portion of the evidence in the record is based, at least in part, on Petitioner's own reporting, a finding that Petitioner is not credible and has a tendency to exaggerate the intensity, persistence and limiting effects of his symptoms undermines or calls into question a significant amount of the evidence presented. Additionally, the ALJ's assessment is supported by the RFC analysis completed by the social security consultant on January 12, 2006, finding that Petitioner has no mental limitations in functioning and is capable of light work. (AR 215-220.) Therefore, although there is evidence in the record supporting Petitioner's position, if the evidence could result in "more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679. Based on the foregoing, The ALJ's evaluation of the medical evidence is supported by substantial evidence and must be upheld.

Finally, the ALJ's RFC determination is supported by Petitioner's admitted non compliance with taking his prescribed medications. The ALJ concluded that, because Petitioner

MEMORANDUM DECISION AND ORDER - 13

was not compliant with medications that would restore functionality and the ability to work, Petitioner was not entitled to benefits unless he had a good reason for failure to comply. (AR 20 *citing* 20 C.F.R. § 416.930 (b)); *see also Warre v. Commissioner of Social Security*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The ALJ found, "[w]hile the Administrative Law Judge takes into consideration that claimant's noncompliance was intricately related to his depression, he does not excuse him on that grounds. Ultimately, he has to take responsibility for his well-being, and if compliance with medical directions would restore him to functionality, he should not be granted benefits when his disability could have been prevented by more diligent effort at recovery." (AR 21-22.)

There is evidence in the record to support the conclusion that, while on medication, Petitioner's functioning improved. For example, on June 15 and July 27, 2007, during sessions with Mr. Dye, his therapist, Petitioner admitted that taking his medication helped. (AR 259, 254.) Mr. Dye also noted that Petitioner had decreased irritability and criminal thinking and was less bothered by bizarre paranoia when taking his medication. (AR 184.) This conclusion is not contested by Petitioner. Therefore, the Court finds no error in the ALJ's RFC findings.

**ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the Petition for Review is **DISMISSED**.



DATED: March 29, 2010

Honorable Candy W. Dale
Chief United States Magistrate Judge